# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHAEL O'SHEA and
SANDRA O'SHEA,

     Plaintiffs,

Case No. 17-11689

v.

HON. DENISE PAGE HOOD

CITY OF NORTHVILLE,
OFFICER ANDREW KIRBY,
DON LINDEMEIR, PATRICE
McGRATH, CAROL McGRATH,
LISA BISHOP, SPASE PETROVSKI,
BILJANA PETROVSKI, and
DORIS RESETAR,

     Defendants.

_____/

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGEMENT
FILED BY OFFICER KIRBY AND THE CITY [#28] AND THE
PETROVSKIS [#33] and GRANTING IN PART AND DENYING
IN PART MOTIONS FOR SUMMARY JUDGMENT FILED
BY LISA BISHOP, CAROL McGRATH, PATRICE McGRATH,
AND DORIS RESETAR [#29] AND DON LINDEMEIR [#32]**

## I.    INTRODUCTION

This case involves a dispute between Plaintiffs Michael and Sandra O'Shea

("Plaintiffs") and the City of Northville ("City"), City Police Officer Andrew

Kirby ("Officer Kirby"), and several co-owners within a condominium complex

where Plaintiffs formerly lived. Defendant co-owners made calls to the City Police

Department after Plaintiffs reportedly violated a dog leash ordinance.  A call also was made following an altercation between Mr. O'Shea and Defendant Donald Lindemeir after Mr. O'Shea placed training flags for the O'Sheas' dogs in the common area. Plaintiffs allege that the City and Officer Kirby conspired with condominium co-owner Defendants to violate Plaintiffs' constitutional rights and commit tortious acts. Plaintiffs seek damages and equitable relief.  Defendants have filed several Motions for Summary Judgment against Plaintiffs:

**A.** By Andrew Kirby and the City of Northville [Dkt. No. 28];

**B.** By Lisa Bishop, Carol McGrath, Patrice McGrath, and Doris Resetar [Dkt. No. 29];

**C.** By Don Lindemeir [Dkt. No. 32]; and

**D.** By Biljana and Spase Petroviski [Dkt. No. 33].

Plaintiffs filed a joint response to Defendants' Motions [Dkt. No. 42], and reply briefs were filed by all Defendants except for Don Lindemeir.

For the reasons that follow, the claims against all Defendants are dismissed, except for: (a) the malicious prosecution  claims against Doris Resetar and Don Lindemeir; and (b) the negligence and assault and battery claims against Don Lindemeir.

## II.    BACKGROUND

Plaintiffs lived in the North Lexington Condominiums ("North Lexington") in Northville, Michigan, for 20 years. Michael O'Shea served as President of the condominium association for 16 years. The disputes in this matter allegedly arose from certain decisions Mr. O'Shea made during his tenure. Plaintiffs have two sheep dogs, Katie and Molly. Katie is a service dog. Plaintiffs kept and trained the dogs continuously at North Lexington. Mr. O'Shea alleges that other North Lexington owners— Defendants Lisa Bishop ("Ms. Bishop"), Doris Resetar ("Ms. Resetar"), Patrice & Carol McGrath ("McGraths"), Spase & Biljana Petrovski ("Petrovskis"), and Don Lindemeir ("Mr. Lindemeir") (collectively the "co-owner Defendants") -- made various complaints about his dogs and confronted Mr. O'Shea regarding: (a) a tree removal, (b) modifications to his vent system; and (c) a stolen wind chime. Mr. O'Shea received verbal threats and harassing phone calls from co-owner Defendants, including Ms. Bishop, Patrice McGrath, and Ms. Resetar, that included statements such as "you're going to jail," "we're goin to get you," "have your dogs been sick lately?" and "I'd keep an eye on your dogs." [Dkt. No. 28, Ex. 1, at 23-24] Plaintiffs received numerous phone calls to their home and business, during which a person would blow an air horn into the phone or schedule false appointments to disrupt Mr. O'Shea's business. [Dkt. No. 28, Ex. 1, at 65] Mr. O'Shea states that: (1) he caught Mr. Petrovski "in [his] garage

taking pictures" of his vents; and (b) "they were going to run [him] off the board, and run [him] out of the neighborhood." [Dkt. No. 28, Ex. 1, at 61].

According to Ms. Resetar, the O'Sheas' dogs attacked her on June 15, 2016. She reported the incident to Officer Peter Davis ("Officer Davis") of the City Police Department, alleging that Mr. O'Shea violated the dog leash ordinance. Officer Davis called Mr. O'Shea and informed him of the dog leash ordinance violation. Mr. O'Shea denied that his dogs attacked Ms. Resetar on the day in question. Mr. O'Shea also asserted that the dog was a service dog, so he does not have to follow the ordinance pursuant to the Americans with Disabilities Act. Officer Davis called Mr. O'Shea back and told him that the dog must be performing official service and the dog must be under the control of its owner. Mr. O'Shea responded that "[he] was right and [Officer] was wrong" and that he was "white, right and over 21" and therefore "allowed to do whatever he wanted." [Dkt. No. 28, Ex. 3, at 4]. Ms. Resetar moved forward with her complaint, and the O'Sheas ultimately received tickets for the ordinance violation. A formal hearing took place on October 10, 2016, and the tickets were dismissed. The district court judge ruled that the common area of the condo complex was private and not subject to the ordinance.

On July 2, 2016, the O'Sheas had training flags installed in the common area of the condominium complex after obtaining a modification from the Association to have an invisible fence. The fence was about 125 feet wide and 120 feet long. Mr. Lindemeir saw the flags and "went out and started picking them up." [Dkt. No. 28, Ex. 4, at 10]. Mr. O'Shea saw Mr. Lindemeir "and asked him what he was doing." [Dkt. No. 28, Ex. 1, at 150]. Mr. Lindemeir responded that Officer Kirby of the Northville Police Department said Mr. Lindemeir could pick them up. Mr. O'Shea reached for the flags, and Mr. Lindemeir hid them behind his back. Mr. Lindemeir then stabbed Mr. O'Shea in the arm with the flags. Mr. O'Shea went to Providence Park Hospital to treat his injury. Mr. Lindemier alleges that Mr. O'Shea hit his chest when Mr. O'Shea tried to take the flags away. Mr. Lindemier alerted the police, and Officer Kirby and City Officer Smith responded. Mr. Lindemeir indicated that he wanted to press charges against Mr. O'Shea. Officer Kirby contacted Mr. O'Shea, and Mr. O'Shea said he did not want to press charges against Mr. Lindemeir. On July 21, 2016, Mr. O'Shea decided that he did want to press charges against Mr. Lindemeir but wanted the City to press charges on his behalf. The City declined to press charges against Mr. Lindemeir, so Mr. O'Shea pressed charges himself on August 22, 2018.

Mr. O'Shea was charged with assault and battery with respect to the July 2, 2016 incident. He turned himself into the City Police Department. Mr. Lindemeir and Officer Kirby testified at trial in December 2016. Mr. O'Shea was found not guilty by a jury. In December 2016, the O'Sheas sold their condo for $225,000. They originally bought it for $140,000. Plaintiffs bought a new condo for $325,000 because "defendants made it impossible for him to live in the" North Lexington Condominiums. [Dkt. No. 28, Ex. 1, at 65].

Plaintiffs filed this lawsuit against the Defendants on February 15, 2017. Plaintiffs alleged assault and battery (Count I) and negligence (Count V) against Mr. Lindemeir only. Plaintiffs alleged gross negligence (Count VI) and violation of their constitutional rights under 42 U.S.C. § 1983 (Count VII) against only Officer Kirby and the City. Plaintiffs alleged abuse of process (Count II), intentional infliction of emotional distress (Count III), and malicious prosecution (Count VIII) against "all" Defendants. Plaintiffs seek a preliminary and permanent injunction (Count IV) ordering all Defendants to cease and desist from any harmful activities regarding the incidents aforementioned.

## III. APPLICABLE LAW & ANALYSIS

### A. Rule 56

Rule 56(c) requires that the court grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing there is no genuine issue of material fact. *Id.* An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a summary judgement motion, the nonmoving party is required to present evidence that would allow a reasonable jury to return a verdict in their favor. *Id.* The court must view the motion in the light most favorable to the nonmoving party, however, adverse parties must set forth specific facts that show there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## B. Qualified Immunity

As recently stated by the Supreme Court:

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and quotation marks omitted). Qualified immunity is a two-step process. *Saucier v. Katz*, 533 U.S. 194 (2001). First, the Court determines whether, based upon the applicable law, the facts viewed in a light most favorable to the plaintiff show that a constitutional violation has occurred. Second, the Court considers whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Saucier v. Katz, supra.*; *Sample v. Bailey*, 409 F.3d 689 (6th Cir. 2005). Only if the undisputed facts, or the evidence viewed in a light most favorable to the plaintiff fail to establish a prima facie violation of clear constitutional law can this

court find that the Defendants are entitled to qualified immunity. *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).

Once a government official has raised the defense of qualified immunity, the plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (citation omitted). A plaintiff must also establish that each individual defendant was "personally involved" in the specific constitutional violation. *See Salehphour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (unpublished) ("It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants").

Officer Kirby asserts that he is entitled to qualified immunity on the claims against him, and the Court finds that Plaintiffs have not provided any evidence that Officer Kirby is not entitled to qualified immunity. Viewing the facts in the light most favorable to the Plaintiffs, it is not clear that Officer Kirby violated a statutory or constitutional right. Plaintiffs assert that Officer Kirby encouraged the dispute between Plaintiffs and co-owner Defendants. [Dkt. No. 42, at 10] Plaintiffs state that Officer Kirby instructed the co-owner Defendants to call the

City Police Department every time the O'Sheas' dogs were off their leashes. [Dkt. No. 42, at 10] Plaintiffs claim Officer Kirby ignored their statements letting him know that they had permission from the condominium association to install and maintain the electric fence. [Dkt. No. 42, at 10] Plaintiffs also claim that Officer Kirby told co-owner Defendants to "get their association together to boot (Mr. O'Shea) off" and stated that he thought Mr. O'Shea was "taking advantage of his disability." [Dkt. No. 42, at 10-11] Officer Kirby admitted to telling Mr. Lindemeir that "if I lived here, I would take down the flags too." Plaintiffs failed to set forth any authority that would serve as the basis for concluding that there was any clear constitutional or statutory right that Officer Kirby violated. Officer Kirby's actions are not those that a reasonable person would have known violated the O'Sheas' constitutional rights. Officer Kirby is entitled to qualified immunity as to the violation of 42 U.S.C § 1983 claim.

### C. Governmental Immunity- State Law Claims

The City argues that it is entitled to governmental immunity on the claims against it. The Michigan Governmental Immunity Act provides immunity from tort liability to governmental agencies and public officials while acting in their official capacity. The Act states, "Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the

governmental agency is engaged in the exercise or discharge of a governmental function." M.C.L. § 691.1401. There are a few narrowly-drawn exceptions: M.C.L. § 691.1402 (defective highway exception); M.C.L. § 691.1405 (motor vehicle exception); M.C.L. § 691.1406 (defective public building exception); M.C.L. § 691.1413 (propriety function exception); and M.C.L. § 691.1407 (public hospital exception. *Ross v. Consumers Power Co.* (on rehearing), 363 N.W.2d 641 (1984). In order to survive a dispositive motion, Plaintiffs have the burden of establishing that the alleged claims fall within an exception to governmental immunity.

Plaintiffs have failed to show an exception to governmental immunity as to the City. Plaintiffs allege that the City is vicariously liable for the actions of Officer Kirby [Dkt. No. 1, at 8], but Plaintiffs' response merely states that the City is not entitled to summary judgment because Officer Kirby encouraged the dispute between Plaintiffs and co-owner Defendants. [Dkt. No. 42, at 10] Because Plaintiffs have not established that their claims fall within any exception to governmental immunity, summary judgment in favor of the City is GRANTED with respect to Counts IV, VI and VII.

Plaintiffs have alleged a gross negligence claim against Officer Kirby. MCL § 691.1407(2) grants immunity from tort liability to individual government employees, except for acts of gross negligence. *Harrison v. Dep't of Corrections*,

194 Mich. App. 446, 487 N.W.2d 799 (1992). "Gross negligence" is defined in the statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. § 691.1407(2)(c). Applying the provisions of the statute to the actions of Officer Kirby, Plaintiffs have not submitted evidence of any material facts that demonstrates "gross negligence" by Officer Kirby. Plaintiffs state that Officer Kirby: (a) told Mr. Lindemeir to enter onto the land near Plaintiffs' residence; and (b) told Mr. Lindemeir that Mr. Lindemeir had a legal right to pick up and remove flags, [Compl. at 8], and they claim that this was the proximate cause of their harm. The Court finds that more substantial allegations are required for an individual's conduct to qualify for the "gross negligence" exception to the governmental immunity statute because these allegations cannot establish "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. § 691.1407(2)(c). Plaintiffs' gross negligence claim (Count VII) should be dismissed.

Governmental employees also are immune from liability for intentional torts if: (a) the acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of this authority; (b) the acts were undertaken in good faith, or were not undertaken with malice; and (c) the acts were discretionary, as opposed to ministerial. *Odom v.*

*Wayne County*, 482 Mich. 459, 480 (2008). Plaintiffs did not present any legitimate arguments or provide case law to suggest that Officer Kirby's acts were taken in bad faith or malice. Plaintiffs' response simply restates the claims made in their initial complaint. Accordingly, Officer Kirby is granted governmental immunity and Counts II, III, IV, and VIII should be dismissed.

### D. Malicious Prosecution Against all Defendants

Plaintiffs bring a malicious prosecution claim against all Defendants. To succeed on a malicious prosecution claim, a plaintiff must show four elements: (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010).

It is undisputed that the criminal proceedings were resolved in Plaintiffs' favor. Plaintiff provides no evidence or argument that any Defendants other than Ms. Resetar and Mr. Lindemeir actually participated in the prosecution process. The Court finds that there is no evidence that Defendants Spase and Biljana Petrovski, Patrice and Carol McGrath, and Lisa Bishop were involved in any way

with any criminal proceeding against either Plaintiff. Accordingly, the Court grants the Petrovskis' and the McGraths'/Ms. Bishop's Motions for Summary Judgment on the malicious prosecution claim.

As to Ms. Resetar and Mr. Lindemeir, they did testify in court proceedings against Plaintiffs. Ms. Resetar pressed charges against Mr. O'Shea after his dogs allegedly attacked her. Plaintiff asserts that Ms. Resetar gave false information to the police regarding this incident. Plaintiff has offered evidence that Ms. Resetar returned to the same area the next day to diminish her credibility and demonstrate that her statements were untruthful. [Dkt. No. 42, at 5] Mr. Lindemeir also testified in a criminal trial against Mr. O'Shea. Initially, Mr. Lindemeir told Officer Kirby that he had been pushed once, [Dkt. No. 28, Ex. 6, at 30] but he testified in court that he was pushed "three or four or five" times." [Dkt. No. 28, Ex. 6, at 19] The Court finds for purposes of this motion that Mr. Lindemeir and Ms. Resetar influenced the decisions to prosecute Mr. O'Shea.

As to the second element, "probable cause to initiate a criminal prosecution exists where facts and circumstances are sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged." *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015). Viewing the facts in the light most favorable to Plaintiffs, Ms. Resetar's testimony and Mr. Lindemeir's testimony

included false information. Our precedent requires that individuals be free from malicious prosecution based on false testimony. *Id*. at 659, 665-66; *Sykes*, 625 F.3d at 308. The Court finds that there remain genuine issues of material facts as to this element to preclude summary judgment in favor of Mr. Lindemeir and Ms. Resetar.

Regarding the third element, it is assumed that Plaintiffs were deprived of liberty as a result of the criminal proceedings that were resolved in Mr. O'Shea's favor. "Liberty" for the purposes of this element, refers to immunity from being framed and maliciously prosecuted for a crime one did not commit. *Webb*, 789 F.3d 647. Mr. O'Shea turned himself in to the City Police Department after being charged with assault and battery due to his encounter with Mr. Lindemeir. And, as a result of Ms. Resetar's statements, Plaintiffs were issued a ticket for violating a City ordinance. Based on these facts, a jury could find that the Plaintiffs satisfy the required elements of a malicious prosecution claim, and the Court finds that there is a genuine issue of material fact. The Court denies Mr. Lindemeir's and Ms. Resetar's Motions for Summary Judgment on the malicious prosecution claim.

### E. Abuse of Process Against All Defendants

To sustain a claim for abuse of process a plaintiff must plead and prove "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 412 Mich. 1, 30

(1981).  Ulterior purpose "must be more than harassment, defamation, or exposure to excessive litigation costs."  *Early Detection Center*, 403 N.W.2d at 835, 157 Mich. App. 618.  Plaintiff argues that Defendants made reports and complaints to the City Police Department with intent to harass, intimidate, harm, and cause emotional distress.  [Dkt. No. 1, at 5]  Plaintiff contends that Defendants acted improperly by not providing truthful and accurate information.  *Id*.  It is clear from the record that Defendants' contact with the City Police Department resulted from being told by the City Police Department to call whenever Plaintiffs' dogs were loose. At most, Defendants' actions constitute harassment, and this claim requires more than that. Because the ulterior purpose element has not been met, the Court grants summary judgment to all Defendants on the abuse of process claim.

F.  Intentional Infliction of Emotional Distress Against All Defendants

The elements of intentional infliction of emotional distress ("IIED") are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.  *Hilden v. Hurley Med. Ctr.*, 831 F.Supp.2d 1024, 1046 (E.D. Mich. 2011).  Liability for IIED has been found only where the conduct in question has been so outrageous and extreme that it goes beyond every form of decency and is "regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 237 Mich. App. 670, 674 (1999). The test has been described as whether "the recitation of the facts to an average member of the

community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985).

Plaintiff argues that the Defendants calls to the City Police Department reporting false criminal and unlawful acts by Plaintiffs constitute extreme and outrageous conduct. The Court finds these acts are not sufficiently atrocious to amount to a claim of intentional infliction of emotional distress. Plaintiffs fail to point to specific statements or conduct in their response that will be viewed as extreme or would cause an average person to exclaim "outrageous!" Plaintiff's claim of intentional infliction of emotional distress is dismissed against all Defendants.

G. Assault and Battery Against Lindemeir

In order to recover for an assault under Michigan law, an actor must engage in some form of threatening conduct designed to put another in apprehension of an immediate battery. The victim's perception determines whether there was an apprehension of an immediate battery and whether the apprehension of imminent injury was reasonable. *People v. Reeves*, 458 Mich. 236 (1998). Based on Michigan law, a battery is the completion of an assault. *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001).

In the light most favorable to the Plaintiffs, the Court finds that the flag stabbing incident constituted an assault and battery. The incident began by Mr. Lindemeir removing about 20 flags from an area to be used for an invisible fence near the Plaintiffs' home. Although Mr. Lindemeir said that Mr. O'Shea pushed him at this time, Mr. O'Shea denies ever touching Mr. Lindemeir. Mrs. O'Shea, as well as Calvin and Leslie Shuster observed the exchange, and all three of them testified that Mr. O'Shea never pushed Mr. Lindemier. Mr. Lindemeir then acted in a manner that caused the flags to lacerate Mr. O'Shea's arm. Calvin Shuster testified that Mr. Lindemeir hit Mr. O'Shea in the arm with the flags, and Leslie Shuster testified that Mr. Lindemier stabbed Mr. O'Shea in the arm. As a result, Mr. O'Shea suffered a significant laceration on his arm and was treated at the emergency room. Plaintiffs argue that summary judgment would not be proper because many genuine issues of material fact exist regarding the confrontation between Mr. O'Shea and Mr. Lindemeir. See Dkt. No. 42, at 7-9. The Court agrees that there are essential facts in dispute and denies Defendant Lindemeir's Motion for Summary Judgment as to Plaintiffs assault and battery claim.

H. Negligence Against Lindemeir

A viable negligence claim requires that a plaintiff show: (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached or violated the legal duty

owed to the plaintiff; (3) the defendant's breach of duty was a proximate cause of the damages suffered by the plaintiff; and (4) the plaintiff suffered damages. *Riddle v. McLouth Steel Products Corp.*, 440 Mich. 85 (Mich. 1992). Duty involves the question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person.

Plaintiffs contend that Mr. Lindemeir was negligent in the flag stabbing incident. Plaintiffs also contend that Mr. Lindemeir had a duty to avoid acting unreasonably in exposing Plaintiff to harm. Plaintiffs assert that Mr. Lindemeir breached that duty by acting without due care in picking up sharp metal flags and striking the arm of Mr. O'Shea, which resulted in Plaintiff having to go to the hospital to treat injuries. [Dkt. No.1, at 7]    Plaintiffs argue that, even if Mr. Lindemeir's recollection of the incident was accepted, there would still be issues of material fact regarding whether Mr. Lindemeir was negligent in the flag stabbing incident. [Dkt. No. 42, at 9] The Court agrees and denies Defendant Lindemeir's Motion for Summary Judgment on the negligence claim.

I. Civil Conspiracy and Concert of Action Against All Defendants

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Webb v. United States*, 789 F.3d

647, 670 (6th Cir. 2015) (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)). To establish a conspiracy claim, a plaintiff must show that: "(1) a single plan existed, (2) defendants shared in the general conspiratorial objective to deprive the plaintiff of his constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the plaintiff's injury." *Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)) (internal quotation marks omitted).

For a civil conspiracy, an underlying tort is necessary. The only claims that survived summary judgment are malicious prosecution (against Ms. Resetar and Mr. Lindemeir) and assault and battery and negligence claims (against Mr. Lindemeir), but these two defendants were involved in separate events. There is no evidence that Ms. Resetar and Mr. Lindemeir acted in concert with each other. There is no evidence that these two Defendants: (a) knew each other; or (b) came to an agreement and formed and carried out a plan to harm Plaintiffs. Viewing the facts in the light most favorable to the Plaintiffs, there is no genuine issue of material fact regarding any conspiracy. The Court grants Mr. Lindemeir's and Ms. Resetar's Summary Judgment Motions as they relate to Plaintiffs' conspiracy claim.

J. Preliminary/Permanent Injunction

Plaintiffs seek a preliminary and permanent injunction ordering Defendants to cease from any other harmful activities. The harmful conduct is no longer an issue because Plaintiffs no longer live in North Lexington or interact with any of the Defendants. Plaintiffs request for a preliminary and permanent injunction is denied as moot.

IV. CONCLUSION

Accordingly,

IT IS ORDERED that the Motion for Summary Judgment filed by Officer Kirby and the City [Dkt. No. 28] is GRANTED.

IT IS FURTHER ORDERED that Motion for Summary Judgment filed by the Petrovskis [Dkt. No. 33] is GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Lisa Bishop, Carol McGrath, Patrice McGrath, and Doris Resetar is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Defendant Don Lindemeir is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendants Officer Kirby, the City, Lisa Bishop, Carol and Patrice McGrath, and Spase and Biljana Petrovski are DISMISSED from this cause of action. Only Plaintiffs' claims in Counts I and V

(against Don Lindemeir) and Count VIII (against Doris Resetar and Don Lindemeir) remain pending.

IT IS ORDERED.

s/Denise Page Hood
DENISE PAGE HOOD
Dated: March 27, 2019          UNITED STATES DISTRICT JUDGE